EXHIBIT 5A

4



WILLIAM H. BURKE
& ASSOCIATES, INC.

Nobles Island, No. 7
500 Market Street
Portsmouth, NH 03801

777 S. Flagler Drive
West Tower, 8th Floor
West Palm Beach, FL 33401

fax 603 431-5057
800 896-5057

April 18, 2007

RECEIVED
APR 2 3 2007
WITHERSPOON, KELLEY
DAVENPORT, TOOLE, P.S.

Brian Rekofke
Witherspoon, Kelley, Davenport & Toole
422 West Riverside Avenue
Spokane, WA 99201

Re: Thomas Waite

Dear Mr. Rekofke:

I had the opportunity to review additional documents in the case of Thomas Waite. The following additional documents were reviewed.

1. Kaiser Permanente:
    a. CT scan of the head, 6/27/06
    b. EEG, 7/18/06

2. Susan Skinner, M.D., 10/16/06

3. Frederick Wise, Ph.D.

4. William Burkhart, Ph.D.

5. Anthony Choppa, M.Ed.: Revised Report, February 2007

6. David Middleton, Ph.D.

5

7. Duane Green, Ph.D.

8. Angelique Tindall, Ph.D.

9. Pranav Shah, M.D.

10. Fullerton College Transcript

11. Depositions of:
    a. Anthony Choppa, M.Ed., 3/16/07
    b. William Burkhart, Ph.D., 3/15/07

To briefly review this case Mr. Waite was doing missionary work when he was injured secondary to a motor vehicle crash in August of 2003. He was treated acutely at Deaconess Medical Center in Spokane through 9/10/03 when he was transferred to the Rancho Los Amigos Rehabilitation Center. He was engaged in a course of inpatient rehabilitation through 10/2/03 when he was discharged home.

In November of 2003 Mr. Waite established neurology follow-up with Susan Skinner, M.D. Dr. Skinner cleared him to resume driving in November of 2003. He followed up with Dr. Skinner on 12/22/03 and she released him to return to his missionary work. Dr. Skinner noted that he should follow-up with her as needed after returning from completing his missionary work.

In December of 2003 Mr. Waite underwent neuropsychological evaluation that was performed by David Middleton, Ph.D. The purpose of this evaluation was to determine Mr. Waite's recovery from the brain injury he suffered in August of 2003 and to determine whether he had made sufficient recovery to return to his work as a missionary for the LDS church. Dr. Middleton concluded that Mr. Waite cognitively and psychologically was capable of returning to his missionary service. He noted that his performance on nearly all measures of neuropsychological function are within what is considered the normal range. He noted that exceptions included the arithmetic subtest of the WAIS-R and on the verbal memory section of the WMS-R. Dr. Middleton however noted that based upon this evaluation Mr. Waite only demonstrated impairments in the areas of verbal memory. He noted that this deficiency could be adequately compensated for

by using visual aides such as cue cards and the use of a daily planner. He noted that there was no evidence from the test results on this evaluation to indicate that Mr. Waite had not sufficiently recovered in order to return to his full time missionary service.

Mr. Waite completed his missionary work in the spring of 2004. He did not seek additional medical care and did not follow-up with Dr. Skinner until February of 2006 when she conducted a follow-up examination at the request of Mr. Waite's attorney.

Based on her February 2006 re-evaluation Dr. Skinner noted that Mr. Waite did not show any cognitive impairments. She noted that based upon her examination he has "very minimal" neurologic sequelae that include a slight loss of hearing on the left and decreased sense of taste and smell. She noted that he was very functional. Dr. Skinner concluded "No further intervention is necessary." She recommended neurology follow-up as needed.

In June of 2006 Mr. Waite presented with new onset seizure activity. Follow-up with Dr. Skinner was re-established secondary to his seizure activity and anticonvulsant medications were prescribed. In follow-up with Dr. Skinner in July of 2006 she cleared Mr. Waite to resume driving. Mr. Waite followed up with Dr. Skinner in October of 2006. Her impression was that he presented with generalized epilepsy with no reoccurrence. She recommended follow-up at the neurology clinic in six months.

In November of 2006 Anthony Choppa, M.Ed. requested Dr. Skinner's recommendations for future care in his effort to develop a Life Care Plan for Mr. Waite. Mr. Choppa sent Dr. Skinner what he described as his preliminary Life Care Plan and asked her to review and indicate what preliminary recommendations were medically necessary secondary to Mr. Waite's brain injury. Dr. Skinner reviewed this plan and returned it to him on 11/21/06 with a hand written note stating, "I agree with those parts of the plan assigned to my name although I suspect your cost assessments of labs are high." It should be noted that Dr. Skinner endorsed as medically necessary Mr. Choppa's recommendations for neurology follow-up every six months, laboratory studies and anticonvulsant medications.

Dr. Skinner did not endorse as medically necessary Mr. Choppa's recommendations for neuropsychological re-evaluations, psychotherapy,

7

cognitive remediation or antidepressant medications. Dr. Skinner further did not endorse as medically necessary the need for case management, tutoring or functional vocational assessment and counseling.

Although Mr. Choppa requested the input regarding future care from Mr. Waite's treating physician he did not incorporate her opinions in his plan. The preliminary plan that was submitted to Dr. Skinner was eventually submitted as a final plan of future care for Mr. Waite that did not take into consideration Dr. Skinner's opinions.

In may of 2004 Mr. Waite underwent a second neuropsychological evaluation. This evaluation was performed by Duane Green, Ph.D. on behalf of Mr. Waite's attorney. On evaluation Mr. Waite's intellectual capacity was measured in the average range. His academic skills were also measured in the average range with the exception of mathematics which was at the fifth grade level. Dr. Green noted that on neuropsychological testing most sensitive to the integrity of the brain Thomas's performance showed no generalized impairment of brain function. He also presented with no significant impairment in adaptive abilities. His performance was in the normal range on measures of abstract reasoning and logical analysis. His complex psychomotor problem solving and simple and complex flexibility of thought was also measured in the average range. He also showed normal performance for both simple and complex incidental memory. His performance did however note that his attention and concentration were variable. On personality testing Mr. Waite presented with significant problems with depression. Dr. Green's diagnostic impressions were that Mr. Waite presented with a cognitive disorder NOS and a depressive disorder NOS. He noted that the neuropsychological test results indicated mild generalized and specific neuropsychological dysfunction as well as sensory motor deficits. Fortunately however he noted that Mr. Waite's immediate adaptive functions were not severely impaired. He recommended psychiatric evaluation and possible medications for depression. He also recommended psychotherapy and career planning and vocational services.

Mr. Waite underwent a third neuropsychological evaluation in December of 2004. This evaluation was conducted by Angelique Tindall, Ph.D. On this evaluation Mr. Waite's intellectual capacity was measured in the average to high average range. His academic skills were consistent with his

4

educational history. His cognitive flexibility was above average. Verbal fluency was in the average range. Confrontational naming was mildly below average. His capacity for organization and planning was mildly below average secondary to impulsivity and attention errors. Visual motor speed and speed of information processing were in the average range. His fine motor dexterity was measured in the mildly below average range. New verbal learning and memory were below average for unstructured material and average for structured material. Memory for nonverbal information was in the average to above average range. Psychologically he presented with a low self esteem and diminished self confidence with some depressive symptomatology. Dr. Tindall noted that when compared to previous neuropsychological evaluations Mr. Waite had made significant gains. Dr. Tindall recommended psychological counseling to build Mr. Waite's self esteem and vocational services. She further noted that he will require the assistance of student services when attending college and will require academic accommodations. He noted that based upon his mathematical skills he will likely struggle with an engineering curriculum.

Dr. Tindall also diagnosed Mr. Waite with a cognitive disorder NOS. She further diagnosed him with an adjustment disorder with symptoms of depression.

In October and November of 2006 Mr. Waite underwent a third neuropsychological evaluation that was performed by William Burkhart, Ph.D. This evaluation was performed at the request of Mr. Waite's attorney. Dr. Burkhart concluded that Mr. Waite suffered a serious traumatic brain injury and by all accounts had improved over the last three years. Dr. Burkhart noted that despite test evidence for encouraging recovery he noted there was ample test evidence that selective attention skills and attentional flexibility or ability to switch conceptual sets remain highly variable and unreliable. He noted that Mr. Waite presented with problems with impulsivity, planning, processing speed, sequencing and organization. He noted that practically these kinds of impairments on testing mean that every day memory, decision making and social coping will remain problematic and will require substantial assistance from others and/or self structuring strategies and accommodations or compromise. He further noted that in his opinion Mr. Waite was suffering from major depression and generalized anxiety. Based on Dr. Burkhart's evaluation he presented specific recommendations that he noted should be included in Mr. Waite's Life Care

9

5

Plan. He recommended individual psychotherapy twice per week over the next 18 months and then once per week for an additional three to five years. Then he recommended additional psychotherapy six to twelve times per year. Psychotherapy however has not been recommended or prescribed by his treating physician. He also recommended the introduction of antidepressant medication however it should be noted that Dr. Burkhart is unable to prescribe medications and such antidepressant medication has never been prescribed by his treating physician. He also recommended the initiation of psychiatric treatment, which has also not been recommended by Mr. Waite's treating physician. He also recommended ongoing neuropsychological evaluations over Mr. Waite's lifetime. Again no additional neuropsychological evaluations have been recommended by Mr. Waite's treating physician. He further recommended cognitive remediation throughout Mr. Waite's life. This recommendation also has not been prescribed by his treating physician.

Dr. Burkhart further opined that Mr. Waite would be able to complete a four year college degree. However he noted that he would never be able to complete competitively or continuously in the kinds of jobs typically held by college graduates. He noted that Mr. Waite will always require structured work with a moderate amount of supervision and will always need to rely on coworkers as supervisors for executive planning, decision making and organization. It should be noted that this opinion is in stark contrast with prior neuropsychological evaluations and with the vocational opinion presented by Mr. Choppa the identified vocational expert.

Mr. Waite underwent further neuropsychological evaluation in February of 2007. This evaluation was performed by Frederick Wise, Ph.D. at the request of the defense. Dr. Wise concluded that based upon his testing Mr. Waite presents as an individual with average to above average intelligence and that his academic achievement is commensurate with his academic matriculation. He noted that Mr. Waite presented with excellent non-verbal learning and memory and average verbal memory. His attentional skills were considered generally intact with some mild impulsivity and dysregulation. His complex problem solving skills were within normal limits. There was no evidence of expressive or receptive language impairment. Mr. Waite's perceptual and motor examinations were intact. Overall Dr. Wise noted that the testing indicate mild relative inefficiencies in verbal memory and learning and that there was some suggestion of mild

executive dysfunction although not at the level that would appear to be significantly limiting. He noted from and emotional standpoint Mr. Waite reported frustration with his acquired physical and cognitive limitations but denied frank depressive symptomatology.

Dr. Wise concluded that Mr. Waite had made a remarkable recovery from a severe traumatic brain injury. He noted that residual cognitive dysfunction in the form of mild nonverbal memory and learning and executive impairments were suggested from current testing but not at levels which would obviously impair activities of daily living. He noted that he may benefit from a course of outpatient rehabilitation oriented therapy focusing on compensatory skills, adaptation and occupational planning. His emotional status should be closely monitored as he faces challenges of school and work. No further neuropsychological, pharmacological or psychotherapeutic intervention appeared warranted based upon this evaluation.

In March of 2006 Mr. Waite was examined by Pranav Shah, M.D., Psychiatrist. His impression was that Mr. Waite presented with depression, NOS. Mr. Waite preferred not to be prescribed medications at this time. Dr. Shah noted that he will try regular exercise and to become more social. Dr. Shah noted that Mr. Waite's concentration and short term memory were not significantly impaired on basic tests. Mr. Waite followed up with Dr. Shah in July and September of 2006. He continued to be diagnosed with a depression, NOS. Mr. Waite continued to decline antidepressant medications.

Mr. Choppa presented a revised Life Care Plan in February of 2007. However the only revision on this plan was additional recommendations for cognitive remediation. In Choppa's first report he recommended three to six sessions of cognitive remediation. However in his second report he revised this recommendation to three to six sessions every three to five years. Mr. Choppa again included numerous recommendations in this revised plan that were not recommended or endorsed by Dr. Skinner as medically necessary.

Mr. Choppa testified in his deposition on 3/16/07 that the recommendations not endorsed by Dr. Skinner as medically necessary were included in the plan based upon the recommendations presented by Dr. Burkhart. Again it

7

should be noted that Dr. Burkhart is not a medical doctor and he cannot prescribe or order those items that he presented as recommendations in his plan.

Based upon the review of these additional documents it is clear that while Mr. Waite suffered a severe traumatic brain injury in August of 2003 he has made a remarkable recovery. On neuropsychological evaluation four months post injury Dr. Middleton noted that all measures of neurocognitive function were considered in the normal range with the exception of mathematical skills which was a pre-existing problem and verbal memory. However Dr. Middleton considered Mr. Waite capable of returning to his missionary work and living independently in the community. On repeat neuropsychological evaluation nine months post injury Dr. Green noted that the overall results of his evaluation showed no generalized impairment of brain function. Dr. Tindall further evaluated Mr. Waite sixteen months post injury and noted that he had made significant gains when her results were compared to prior evaluations. Again the primary problem on this evaluation was verbal memory, which Dr. Tindall characterized as below average.

When Dr. Skinner re-evaluated Mr. Waite at the request of his attorney thirty months post injury he noted that he presented with very minimal neurologic sequelae. She considered his neurologic sequelae limited to a slight left side hearing loss and impaired sense of taste and smell. She considered his cognitive functions within normal limits. Again it should be noted that Dr. Skinner stated that no further interventions were required.

Dr. Burkhart evaluated Mr. Waite three years post injury and he characterized Mr. Waite as presenting with multiple impairments that were not identified on prior evaluations. He noted for example that Mr. Waite presented with problems with impulsivity, planning, processing speed, sequencing and organization when these cognitive functions were measured in the average range on prior testing. He considered Mr. Waite to require what he described as substantial assistance from others in order to live in the community. It should be noted that no other psychological evaluators or Mr. Waite's treating physician has characterized him as requiring assistance in order to live in the community. In addition, the Life Care Plan presented by Mr. Choppa also did not include substantial assistance in order to live in the community.



8

Mr. Waite was most recently evaluated neuropsychologically by Dr. Wise. Dr. Wise's evaluation was more consistent with the evaluations of Dr. Middleton, Dr. Green and Dr. Tindall. Dr. Wise noted that Mr. Waite presented with mild inefficiencies in the areas of verbal memory and executive functions however he noted these problems were not of the level that would be limiting to Mr. Waite. This conclusion is consistent with that of Dr. Middleton when he noted over three years ago that Mr. Waite was capable of returning to his prior missionary employment and was capable of living independently in the community.

The opinions presented in my initial report in January of 2007 regarding Mr. Waite's needs for future care and treatment are unchanged. These opinions are based upon the opinions and recommendations of Mr. Waite's treating physician over the last three years.

Further, the opinions presented in my initial report regarding Mr. Waite's future labor market access and earning capacity are also unchanged. Mr. Choppa presented his vocational opinion in November of 2006. Dr. Choppa clearly stated in his report that Mr. Waite would be capable of full time employment as an engineering technician or computer assisted designer and drafter. He stated in his deposition that he used this example for illustrative purposes, however the opinion presented in his report is quite clear. He noted that Mr. Waite would be capable of earning the average salary of an engineering technician or computer assisted designer and drafter versus the earning capacity of a civil engineer. However it is clear that Mr. Waite did not have the mathematical reasoning skills nor the mathematical background to succeed in a civil engineering degree program. Even in Dr. Birkhart's deposition he noted that Mr. Waite had premorbid difficulties with mathematical skills and noted that arithmetic was always a weakness. He further stated that his pre-existing arithmetic deficiency bordered on a learning disability in mathematics. Considering all the data regarding Mr. Waite's current level of function as well as his prior academic abilities Mr. Waite is considered capable of completing a four year college degree program with the assistance of student services. Both Dr. Burkhart and Mr. Choppa agreed in their depositions that Mr. Waite would complete a four year college degree. Considering the requirements of a civil engineer Mr. Waite would not have been capable of succeeding in such a degree program and I agree with Mr. Choppa that he will be capable of performing as an



engineering technician or computer aides designer and drafter. The opinion presented in my initial report is unchanged. Considering all the data available as well as Mr. Choppa's opinion Mr. Waite will not experience a loss of earnings over his work life.

If I can be of further assistance please do not hesitate to contact me.

Sincerely,

William H. Burke, Ph.D.

WHB/lw