# EXHIBIT 1A



**FORENSIC SCIENCES**

May 14, 2007

Brian Rekofke, Esq.
Witherspoon, Kelley, Davenport & Toole
1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201

RE:   Thomas Waite v. Church of Jesus Christ of Latter-Day Saints
      DOL:      August 21, 2003
      MRA No.:  8625

## SUPPLEMENTAL INVESTIGATIVE REPORT

*BACKGROUND*

A Preliminary Report, dated 1/22/07 was previously submitted by this investigator. Subsequent to this report, additional information has been reviewed and analyzed. The purpose of this report is to clarify and update the opinions and conclusions that have been previously been authored relative to this new information. The newly received and reviewed information includes the following:

1. Initial report authored by John Hunter.
2. Supplemental report by John Hunter, dated 4/26/07
3. Report authored by Richard Gill.
4. Deposition of John Hunter.
5. Deposition of Mark Ryan.
6. Deposition of Paul Hyde.
7. Deposition of Dillon Hansen.
8. Personal communication with Donald Fossum.
9. Declaration of Ron Miya.
10. Declaration of James Ross.

*CONCLUSIONS & OPINIONS*

1. After meeting in person with Mr. Donald Fossum, he indicated that he stopped at or behind the stop sign. After checking for traffic, he reported that he accelerated

very mildly forward due to a vehicle that was approaching the intersection on his right. He never saw any vehicles to his left that were remotely close to the intersection. Mr. Fossum heard a screeching noise after he had begun to move forward but he could not tell what it was or where it was coming from.

2. Based upon Mr. Fossum's account of the events leading up to the subject impact, it was determined that he moved approximately 33 feet from a stopped position to the point of impact. It would have taken him approximately 3.6 to 4.6 seconds to cover this distance and his speed at impact was between 10 to 12 mph.

3. To give the benefit of the doubt to Mr. Brodhead, the Honda's drag factor was assumed to have been reduced to a value of 0.48 for calculation purposes. This was based in part upon Detective Miya's observations that the Honda' rear tires did not have a worn patch similar to what he found on the front tires. Based upon this, he presumed that there was no braking for the Honda's rear wheels at the time that the Honda was skidding prior to the impact. However, there were tire marks left on the road from the rear wheels after the impact, which suggests that they were functional to some extent, although they did not leave skid marks on the road. It was concluded that Mr. Brodhead was probably traveling above 68 mph when he began to leave skid marks on the road.

4. From Mr. John Hunter's deposition, there were several issues that were determined to be consistent with this investigator's opinions including the following:
    a. Mr. Fossum stopped before entering the intersection.
    b. Based upon his position, Mr. Fossum would have been the favored driver.
    c. It was reasonable that Mr. Fossum would expect that other drivers approaching the intersection would obey the law by stopping at the stop sign and driving at or below the posted speed limit of 35 mph.
    d. Mr. Fossum was the best person to judge where he stopped before he proceeded forward into the intersection.

5. From a review of Mr. Richard Gill's report, it was determined that he has made the following invalid and unreasonable assumptions in reaching his opinions:
    a. He assumed that there was no stop bar or crosswalk markings on the road. A careful examination of the photographs that were obtained at the scene revealed that there were faint markings present on the road.
    b. Mr. Gill erroneously determined that in order for a northbound driver on Adams Road to be "reasonable and prudent," they must pull forward so that they can see several hundred feet down the roadway. This suggests that in order to be a safe driver, all operators of motor vehicles must not only look for vehicles that are near the intersection but those that may be several hundred feet away and traveling greatly in excess of the speed limit even though there are traffic controls requiring oncoming vehicles to stop. Furthermore, Mr. Gill's proposed stopping position for Mr. Fossum


   would require him to stop approximately 9 to 14 feet beyond (to the north of) the stop sign that controls traffic into the intersection.
c. Mr. Gill has performed calculations that have no physical bearing or testimonial basis with the facts of the subject accident. For example, his determination of Mr. Fossum's position at the time that he stopped was not based upon any physical or testimonial evidence. In fact, his calculations were inconsistent with information obtained by this investigator from Mr. Fossum. Consequently, Mr. Gill's calculations pertaining to time and distances were determined to be arbitrary and inaccurate.
d. Mr. Gill assumed that a passenger in Mr. Brodhead's vehicle detected the stop sign with no evidence to indicate whether they actually saw the stop sign or if they were just familiar with the intersection and knew that there was a stop sign at this location. This was also inconsistent with Mr. Brodhead, who stated that he did not recall hearing anyone in his vehicle telling him about the upcoming stop sign. This unfounded assumption has adversely affected the line of sight calculations related to the visibility of the stop sign for Mr. Brodhead and rendered them unreliable and inaccurate.
e. Mr. Gill's opinions about the available line of sight distances are all highly dependent upon one's choice of the initial position of Mr. Fossum. It was determined that Mr. Gill had insufficient information for him to have reached his opinions pertaining to time, distance and line of sight. It would appear that he has merely chosen positions and acceleration values that fit his predetermined conclusions and then used circular logic by working backward to reach the opinions that he began with.

*The preliminary opinions expressed in this report are founded upon a reasonable degree of scientific probability and are based upon my training, experience, education, and the information provided for review. Should any new information be provided, I reserve the right to re-examine my opinions, which may be adjusted accordingly.*

*[signature: Matthew D. Mecham]*

Matthew D. Mecham, MS, PE
CMI-II, ACTAR# 1132, CXLT