# ANNOTATION

## LIABILITY OF OWNER OR OPERATOR OF MOTOR VEHICLE OR AIRCRAFT FOR INJURY OR DEATH ALLEGEDLY RESULTING FROM FAILURE TO FURNISH OR REQUIRE USE OF SEATBELT

*by*

*Robert A. Brazener, J.D.*

§ 1. Introduction:
    [a] Scope, 296
    [b] Related matters, 296
§ 2. Background, summary, and comment:
    [a] Generally, 297
    [b] Practice pointers, 299
§ 3. Automobile cases:
    [a] Liability established or supported, 300
    [b] Liability not established or not supported, 301
§ 4. Aircraft cases; liability for failure to require use of seatbelt:
    [a] Failure to flash seatbelt sign, 301
    [b] Allowing passenger to leave seat in rough weather, 304
§ 5. — Liability for failure to furnish seatbelt, 304

### INDEX

Aircraft cases, §§ 4, 5
Assumption of risk as defense, § 4[b]
Automobile cases, § 3
Background, § 2
Comment, § 2
Expert testimony, § 4[a]

---

### TOTAL CLIENT-SERVICE LIBRARY® REFERENCES

8 Am Jur 2d, Automobiles and Highway Traffic § 583.1; Aviation § 96; 14 Am Jur 2d, Carriers § 1033

4 Am Jur Pl & Pr Forms (Rev ed), Aviation, Form 164

16 Am Jur Proof of Facts 351, Seat Belt Accidents

ALR Digests, Aeroplanes §§ 40–43

ALR Quick Index, Automobiles and Highway Traffic; Aviation; Carriers; Seat Belts

---

Consult POCKET PART in this volume for later case service

Federal Employers' Liability Act, liability under, § 3[a]  
Introduction, § 1  
Owner of automobile, duty to instal seatbelt by, § 3[a]  
Passenger allowed to leave seat in rough weather, § 4[b]  
Pickup truck, failure of employer to provide seatbelt in, § 3[a]  
Practice pointers, § 2[b]  
Radar, failure to anticipate storm by use of, § 4[a]  
Related matters, § 1[b]  
Res ipsa loquitur doctrine, applicability of, § 4[a]  
Scope of annotation, § 1[a]  
Sign requiring use of seatbelt, failure to flash, § 4[a]  
Summary, § 2  
Taxicabs, § 3[a]  
Turbulent weather, effect of flight in, § 4

### TABLE OF JURISDICTIONS REPRESENTED
Consult POCKET PART in this volume for later case service

| | | | |
|---|---|---|---|
| US | §§ 2[a], 4[a, b] | Iowa | §§ 2[a], 3[b] |
| Cal | §§ 2[a], 3[a], 4[a] | NY | § 2[a] |
| DC | § 4[a] | Tenn | §§ 2[a], 5 |
| Idaho | § 4[a] | Wyo | § 2[a] |

## § 1. Introduction

### [a] Scope

This annotation[1] collects those cases dealing with the liability of an owner or operator of a motor vehicle[2] or aircraft[3] for injury or death allegedly resulting from failure to furnish or require the use of seatbelts. Actions against manufacturers or dealers are excluded herefrom. Cases discussing the liability of an operator of a motor vehicle for injuries or death to others resulting from his failure to use a seatbelt are not included herein. Similarly, the question of contributory negligence of one in not using an available seatbelt is also excluded.[4]

### [b] Related matters

Liability for injury to guest in airplane. 40 ALR3d 1117.

Automobiles: Liability of owner or operator of motor vehicle for injury, death, or property damage resulting from defective brakes. 40 ALR3d 9.

Comment Note.—Effect of violation of safety equipment statute as establishing negligence in automobile accident litigation. 38 ALR3d 530.

Automobile occupant's failure to use seat belt as contributory negligence. 15 ALR3d 1428.

Duty and liability of carrier by motorbus to persons boarding bus. 93 ALR 2d 237.

Liability under Jones Act or unseaworthiness doctrine for failure to furnish individual safety equipment or to require its use. 91 ALR2d 1019.

Liability under Federal Employers' Liability Act for failure to furnish indi-

---

1. Insofar as the subject matter is covered herein, it will no longer be necessary to consult the annotation at 50 ALR2d 898.

2. For the purposes of this annotation, the term "motor vehicle" is limited to those vehicles designed primarily for travel on public thoroughfares.

3. The term "aircraft" as used herein is limited in meaning to heavier-than-air vehicles.

4. For an annotation on contributory negligence in failing to use seatbelts, see 15 ALR 3d 1428.

vidual safety equipment or to require its use. 80 ALR2d 836.

Liability of carrier by air for injury or death of passenger due to downdraft, updraft, or turbulence. 73 ALR2d 379.

Contributory negligence or assumption of risk of passenger leaving seat before conveyance stops. 52 ALR2d 585.

Carrier's liability to passenger injured while using washroom or lavatory facilities on conveyance. 50 ALR2d 1071.

Duty of airplane owner or operator to furnish aircraft with navigational and flight safety devices. 50 ALR2d 898.

Admissibility, in Federal Employers' Liability Act action, of rules, practices, precautions, safety devices, etc., used by other railroads. 43 ALR2d 618.

Liability for injury to customer or patron from defect in or fall of seat. 21 ALR2d 420.

Validity and construction of safety regulations issued under Federal Traffic and Motor Vehicle Safety Act, 15 USC §§ 1391–1425.

Validity and construction of safety standards issued under National Traffic and Motor Vehicle Safety Act of 1966, as amended (15 USC §§ 1381 et seq.). 6 ALR Fed 988.

§ 2. Background, summary, and comment

[a] Generally

Under the common-law rules of negligence, the owner or operator of an automobile[5] or aircraft[6] may be held liable for ordinary negligence which proximately causes injury to a passenger. The owner or operator is therefore required to exercise ordinary or reasonable care under the particular circumstances. The circumstance most often determinative of the standard of care owed a passenger of an aircraft or automobile is the status of the passenger.[7] Therefore, while an owner or operator of an automobile or aircraft, in the absence of a guest statute, may be liable to a guest only for ordinary negligence, if the relationship of carrier and passenger exists, the owner or operator may be held to a much higher degree of care.[8] Whether his passengers have the status of guests or passengers for hire, the owner or operator of an automobile or aircraft owes them the duty of exercising reasonable care to ascertain that the vehicle in which they are to travel is safe for that purpose.[9]

Within the scope of these broad principles lies the answer to the question whether the owner or operator of an aircraft or automobile may be liable for failure to furnish or require the use of seatbelts.

Until the early 1960's, the use of seatbelts was generally associated with aircraft rather than automobiles and, indeed, seatbelt laws for aircraft had been in effect for a number of years.[10] All

---

5. As to the standard of care owed to a passenger by the owner or operator of an automobile, see 8 Am Jur 2d, Automobiles and Highway Traffic § 465.

6. As to the duty owed a passenger by an owner or operator of aircraft, see generally 8 Am Jur 2d, Aviation § 82.

7. See 8 Am Jur 2d, Automobiles and Highway Traffic § 465, and 8 Am Jur 2d, Aviation § 81.

8. As to the standard of care owed by a carrier to a passenger, see 14 Am Jur 2d, Carriers §§ 914, 915.

For the standard of care owed by an aircraft carrier in particular, see generally 8 Am Jur 2d, Aviation § 68.

9. As to the duty of the owner or operator of an automobile with respect to safety of the vehicle, see generally 8 Am Jur 2d, Automobiles and Highway Traffic § 500.

For similar duties owed by the owner or operator of aircraft to passengers, see 8 Am Jur 2d, Aviation § 88.

10. The current basis for regulation of safety equipment in aircraft is set out in Subchapter VI of the Federal Aviation Act of 1958, 49 USC § 1421.

aircraft which fall under the jurisdiction of the Federal Aviation Administration are required to be equipped with a seatbelt for each forward-facing seat.[11] In addition, air carriers which are subject to F.A.A. regulation cannot operate an aircraft unless each seat is equipped with a seatbelt.[12]

Federal regulations do not require that passengers, whether guests or passengers for hire, wear seatbelts at all times while the aircraft is in motion. However, it is required that seatbelts of all passengers on an air carrier be fastened during both landing and takeoff,[13] and that air carriers brief passengers prior to takeoff as to the use of seatbelts.[14] Other than during takeoff and landing, however, there is apparently no statutory duty to insure that passenger seatbelts are fastened. It therefore follows that whether or not a carrier has a duty under given circumstances to see that seatbelts are fastened during flight would depend upon the common-law rules of negligence, set out supra, and it has accordingly been held that an air carrier will be liable for injuries suffered by passengers thrown from their seats during air turbulence, where evidence indicates that the seatbelt sign had not been turned on.[15] Similarly, an air carrier was held liable for injuries caused by air turbulence when, during a rough flight, a stewardess permitted a passenger to unfasten her seatbelt and go to the lavatory.[16]

Government regulation of the installation and use of seatbelts in automobiles is less developed than the legislation pertaining to aircraft, but steps have been taken both on the federal[17] and state[18] levels to set seatbelt standards. However, most legislation dealing with automobile seatbelt requirements is aimed at the manufacturer and seller, rather than at the owner or operator.[19]

---

11. As to specific airworthiness standards for seatbelts in normal, utility, and acrobatic category aircraft, see 49 CFR § 23.787.

Airworthiness standards for seatbelts for transport category aircraft are contained in 49 CFR § 25.785.

In a case decided prior to the promulgation of these regulations, it was held that an operator of an aircraft was not liable for injuries to a passenger, even though the aircraft was not equipped with seatbelts. See Boulineaux v Knoxville (1935) 20 Tenn App 404, 99 SW2d 557, infra § 5.

12. To this effect, see 49 CFR § 121.311.

13. See 49 CFR § 121.311.

14. See 49 CFR § 121.571.

15. § 4[a], infra.
Federal regulations do require that air carriers must equip each aircraft with a seatbelt sign, but the sign is only required to be illuminated during takeoff and landing. See 49 CFR § 121.317.

16. Urban v Frontier Air Lines (1956, DC Wyo) 139 F Supp 288, infra § 4[b] (apparently applying Wyoming law).

17. Under 15 USCS § 1392, the Secretary of Transportation is empowered to establish, by order, appropriate federal motor vehicle standards.

Although federal regulations do not expressly require the installation of seatbelts in new passenger cars, they do require seatbelts in certain types of multipurpose vehicles and trucks. See National Highway Safety Bureau Motor Vehicle Safety Standard No. 208, 49 CFR § 521.21.

18. Beginning with Wisconsin in 1961, several states have passed statutes requiring the installation of seatbelts in new cars. See 16 Am Jur Proof of Facts 351, Seat Belt Accidents § 7.

19. For example, it was held in Forse v Turner (1967) 55 Misc 2d 248, 284 NYS2d 995, that an automobile dealer who sold a car which was not equipped with seatbelts would not be liable for the death of a passenger arising out of a collision of the car with another automobile, notwithstanding that the car was manufactured after June 30, 1964, and was therefore required by state statute to be equipped with seatbelts. Granting the motion of the automobile dealer to dismiss the complaint upon the ground that it failed to state a cause of action against him, the court interpreted the statute as placing no duty upon the seller of automo-

It therefore follows that whether there exists a duty on the part of an automobile owner or operator to supply seatbelts for use by passengers depends either upon the common law or upon some statutory requirement not directly connected with the seatbelt requirement. Along these lines, it has been held that an employer who allowed an employee to use a truck which did not have seatbelts did not give the employee a safe place to work, under the provisions of the Federal Employers' Liability Act, and was therefore liable for the death of the employee who suffered fatal injuries when he was thrown from the truck in an accident.[20] On the other hand, notwithstanding its status as a carrier of passengers, a taxicab company has been held not to be under a duty to supply seatbelts for the use of passengers, and therefore not liable for those injuries to a passenger which might be directly attributable to the absence of a seatbelt.[1]

No cases have been found in which it was held that the owner or operator of an automobile was under a duty to require or suggest to passengers that available seatbelts be worn, although it has been claimed in many cases that the failure of a passenger to wear seatbelts is negligence even absent a suggestion by the driver that the seatbelt be worn.[2]

**[b] Practice pointers**

Whether or not seatbelts are required by statute or whether there exists a statutory duty to see that they are in use often depends upon the particular type of automobile or aircraft being used; thus, in any given jurisdiction, belts may be required in passenger cars but not in multipurpose vehicles or trucks or buses. Consequently, both federal and state law should be carefully checked as to seatbelt requirements. Also, plaintiff's status as a passenger or guest should clearly be established in order to determine the degree of care owed to him by the owner or operator of the vehicle.

There would appear to be little difficulty in proving that a defendant breached an established duty to furnish seatbelts, since there would almost certainly be some evidence in an automobile or aircraft, even though wrecked, which would indicate the presence or absence of seatbelts. However, whether a passenger in an automobile or aircraft was properly required or advised to wear a seatbelt is an issue which is much more difficult to resolve. Although no automobile cases were discovered regarding this issue, an examination of the aviation cases in point indicates that the following factors tend to prove that an airline passenger was not advised to wear his seatbelt: failure to illuminate the "Fas-

---

biles manufactured after the specified date, to have them equipped either with anchorage units or safety seatbelts. The court pointed out that when the legislature intended to place a duty upon the seller or dealer under the Vehicle and Traffic Law, it has plainly said so, and referred to that section of the act which expressly makes it unlawful to sell any safety seatbelts unless certain performance specifications are met, and to that subdivision which expressly prohibits a person, firm, or corporation engaged in the business of selling used motor vehicles from selling certain models unless equipped with safety seatbelts. Referring to that section of the act which provides that every motor vehicle registered in the state and manufactured or assembled after June 30, 1962, shall be equipped with sufficient anchorage units for attaching at least two sets of safety seatbelts in the front seat of the motor vehicle, the court pointed out that the words "seller" or "sale" nowhere appeared in that provision.

**20.** Mortenson v Southern Pacific Co. (1966) 245 Cal App 2d 241, 53 Cal Rptr 851, infra § 3[a].

**1.** Tiemeyer v McIntosh (1970, Iowa) 176 NW2d 819, 49 ALR3d 285, infra § 3[b].

**2.** For an annotation on the failure to use an available seatbelt as contributory negligence, see 15 ALR3d 1428.

ten Seat Belt" sign; failure to announce the warning to fasten seatbelts; and failure of a stewardess to insure that the seatbelt was fastened.[3] Also relevant in this regard is the plaintiff's prior experience with air flight. If the plaintiff has made relatively few flights it may be desirable to bring out this fact to show his unfamiliarity with seatbelt procedure.

If the plaintiff is attempting to prove that he was not required or advised to wear his seatbelt, he may first be put in the position of proving that he was not wearing a seatbelt when the accident or mishap occurred. In this regard, it may be shown that the seatbelt assembly was capable of withstanding the particular crash load experienced and that the injuries sustained by the plaintiff would not have been as severe had he been wearing a belt.[4]

Finally, the practitioner should keep in mind that in an action brought against one who failed to provide a seatbelt or require its use, the emphasis is generally not on the issue of whether or not the injuries complained of were proximately caused by the particular accident or mishap. Rather, the important question of causation is the extent to which the defendant's failure to provide seatbelts or require their use contributed to the injuries sustained by the plaintiff. In an action for failure to furnish seatbelts it is therefore imperative to obtain medical testimony as to the severity of the injuries actually sustained and how they would have been mitigated had a seatbelt been worn. Similarly, there should be technical testimony showing that under the exact conditions surrounding the accident the plaintiff would not have been ejected from the vehicle or otherwise thrown from his seat had he been using a seatbelt. In an action for failure to advise or require use of a seatbelt, technical evidence as to the strength and anchorage of the available seatbelt would determine whether or not it would have been able to withstand the particular impact involved, and, again, medical testimony should be introduced to determine the nature of the injuries suffered and how they would have been mitigated had the belt been in use.

§ 3. Automobile cases

[a] Liability established or supported

In the following case it was determined that under the particular circumstances involved the jury could have found that the owner of an automobile had a statutory duty to instal seatbelts in the vehicle.

Where a railroad employee was killed when the pickup truck he was driving was hit and forced off the road by a vehicle driven by an intoxicated person, it was held in Mortenson v Southern Pacific Co. (1966) 245 Cal App 2d 241, 53 Cal Rptr 851, that there was sufficient evidence presented to go to the jury on the issue of whether the defendant railroad was liable under the Federal Employers' Liability Act for alleged negligence in failing to equip the truck with seatbelts. Noting that under the Act the test of negligence in supplying the employee a safe place to work is "whether reasonable men, examining the circumstances and the likelihood of injury, would have taken those steps necessary to remove the danger," the court referred to expert testimony to the effect that had the decedent not been thrown from the truck, he might not

---

**3.** A suggested line of questioning for use by the attorney for the plaintiff, in which it is established that the plaintiff was not properly advised to use his seatbelt, appears at 2 Am Jur Proof of Facts 277, Aviation, Proof 2.

**4.** For a sample proof offering both medical and technical testimony to show that the seatbelt in question was not being worn at the time of the accident or mishap, see 16 Am Jur Proof of Facts 351, Seat Belt Accidents § 58.

have been killed. The court thus rejected the contention that the sole proximate cause of death was the criminal negligence of the drunken driver who ran into the pickup, since under the Act, the test of causation is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the death. Referring to testimony as to the number of automobile collisions in the area in question and stating that such testimony would afford a basis for finding that a collision forcing a car off the roadway is reasonably foreseeable, the court concluded on the summarized evidence that it was for the jury to decide whether defendant's failure to provide seatbelts amounted to negligence, and reversed the trial court's judgment of nonsuit.

### [b] Liability not established or not supported

In the following case, the court held that under the particular circumstances involved, the owner of an automobile was not under a duty to furnish passengers with seatbelts as a matter of law, and would therefore not be liable, absent proof of actionable negligence, for those injuries sustained which would not have occurred had the passenger been strapped into the seat.

The failure of a taxicab company to provide a seatbelt for passengers' safety was held not to constitute negligence as a matter of law, in Tiemeyer v McIntosh (1970, **Iowa**) 176 NW2d 819, 49 ALR3d 285, an action against a cab company, one of its drivers, and the driver of another car for injuries sustained by a passenger in the cab when it was hit by the other defendant's car. While admitting that the absence of seatbelts was not a contributing cause of the accident, the plaintiff argued that seatbelts would have minimized her injuries, and presented expert witnesses who supported their views with various statistics and studies, and reached the general conclusion in their testimony that seatbelts are a valuable safety device, the cost of installation of which is negligible. Stating its awareness of the fact that a state statute required that seatbelts be installed in all new cars sold after July 1, 1966, the court pointed out that the car in question was not one which was covered by the statute, and that therefore the defendant cab company was under no statutory duty to have seatbelts in the cab at the time the accident occurred. While stating that the defendant cab company is a common carrier obligated to exercise a high degree of care for the safety of its passengers, and that this duty requires a common carrier to provide and use the best machinery and appliances known and in general practical use for the safety of its passengers, the court was of the opinion that this duty stopped short of requiring the cab company to use every known safety device, and stated that the value of seatbelts is not yet so firmly established that reasonable persons could not draw different inferences as to the effect of their use in minimizing injuries. The court thus concluded that the trial judge correctly determined the matter as a question of fact and not as a matter of law, and further implied that under the circumstances presented, the trial judge could have found on the facts that the cab company was not negligent in failing to supply seatbelts in the cab.

### § 4. Aircraft cases; liability for failure to require use of seatbelt

### [a] Failure to flash seatbelt sign

The negligent failure of a pilot to foresee that his flight might encounter turbulent weather, and his corresponding failure to warn passengers to fasten their seatbelts, has been held in several cases to establish liability against the carrier for injuries which could have been pre-

vented or mitigated had the seatbelts been fastened.[5]

Where it appeared that during a scheduled commercial airline flight, defendant's plane encountered a downdraft, dropped almost straight down, and then abruptly surged up again on an ascending air current, throwing the hostess to the floor, tossing passengers from their seats into other seats or onto the floor, and throwing plaintiff, a fare-paying passenger, to the floor, breaking her arm and inflicting other serious injuries, the court in Small v Transcontinental & Western Air, Inc. (1950) 96 **Cal** App 2d 408, 216 P2d 36, held that since there was substantial evidence in the record to support a verdict for plaintiff, the court was bound by that verdict. The plaintiff testified that before encountering the downdraft the flight became rough and the plane began to roll and pitch, that some passengers became airsick, and that she was apprehensive of her safety and worried because the sign directing passengers to fasten their seatbelts was not illuminated; in addition, plaintiff demonstrated the roughness of the flight before the accident by gestures and movements of her body while upon the witness stand. Defendant, although conceding that the seatbelt sign was not on, contended that there was no necessity for it because the flight was smooth and uneventful, until suddenly and without warning the downdraft was encountered, and that plaintiff's injuries were therefore the result of an act of God. The court, however, concluded that the evidence did indicate that the flight was somewhat rougher than ordinary, that under the circumstances it could have

---

**5.** It has been emphasized, however, that where the evidence indicates that the pilot was not negligent in failing to foresee the occurrence of turbulence, the air carrier will not be liable for the pilot's failure to warn the passengers to keep their seatbelts fastened.

Where it was undisputed that the immediate cause of plaintiffs' being thrown from their seats and injured while on defendant's commercial airplane flight was the action of a downdraft through which the plane flew, causing it to descend rapidly or be violently deflected, the trial judge in Kimmel v Pennsylvania Airlines & Transport Co. (1937, F DC Dist Col) [1937] US Av 104, instructed that under ordinary circumstances passengers were required to keep seatbelts fastened only when the plane was taking off and landing, that they must assume as one of the perils of their voyage the risk of traveling under ordinary and usual flying conditions, with their seatbelts unfastened, but that they do not assume the risk for the negligent failure of the carrier to advise them of perils on account of approaching rough or turbulent air which becomes known or indicated to the carrier or the pilot. However, the court felt that since such weather may at times be encountered without warning, it is only when the pilots themselves, as reasonable men, have warning that rough or dangerous conditions are about to be encountered that the duty arises to warn the passengers. While recognizing that pilots could not control winds and storms, downdrafts, or occurrences of that nature, the court nevertheless was of the opinion that this fact did not relieve pilots from exercising the duty to avoid the consequences of such occurrences, to protect against them to the best of their ability, and to take such action as ought to be required of a reasonable pilot under the circumstances whenever he knows or has reason to know or believe that dangerous conditions are about to be encountered. The court therefore charged that if the plane suddenly and unexpectedly, and without prior negligence on the part of the pilot, struck a downdraft, and if an experienced pilot under the same or similar conditions, and in the exercise of the highest degree of skill commensurate with the practical operation of the plane, could not have prevented the injury to plaintiffs, then the pilot was not guilty of negligence, and the verdict must be for the defendant; that the defendant could not be held liable for an unavoidable accident, or one which was not occasioned in any degree by want of such care or skill as defendant was legally bound to exercise; and that defendant could not be held negligent merely because it failed to provide against an accident which it could not reasonably have been expected to foresee.

been found that it was possible to determine or even suspect that downdrafts were likely or possible, and that the operator was bound to take whatever precautions were necessary or available to guard against such dangerous consequences.

And see Eastern Air Lines, Inc. v Silber (1963, CA5 Fla) 324 F2d 38, in which the court held that there was sufficient evidence upon which a jury could find that an airline was liable for injuries suffered by a passenger who was thrown from her seat when the airplane encountered air turbulence. It was undisputed that the seatbelt sign had not been flashed prior to the occurrence of this turbulence, and the court noted that this fact, along with evidence that radar had not been used to gauge the distance of the plane from storms in the area, was sufficient to indicate that the airline had not met the high standard of care owed by a carrier to its passengers.

In Ness v West Coast Airlines, Inc. (1965) 90 Idaho 111, 410 P2d 965, an action for personal injuries suffered by a passenger who was thrown from his seat when the plane in which he was riding hit a sudden downdraft, testimony of a meteorologist that a low-pressure area existed along the course of the flight, that a cold front was advancing into the area, that there were cumulonimbus clouds in the area, and that the flight was over a rough and mountainous terrain, all presented factors which often contribute to the occurrence of air turbulence, was held sufficient to present a question of fact as to whether defendant airline's pilot was negligent in not turning on the "fasten seatbelt" sign while flying through this unsettled area. Reversing a judgment of nonsuit, the court stated that the evidence would support a finding that the sudden downward movement of the plane was caused by air turbulence, which defendant should have anticipated, and that defendant's failure to warn the passengers of the probability of such motion, and the consequent failure of the plaintiff to use his seatbelt, was sufficient to establish causal connection between defendant's failure to warn the plaintiff and the resulting injury. The court was also of the opinion that the doctrine of res ipsa loquitur would not be applicable to a case such as this, because there was evidence that the dropping of the plane was caused by an air current or air turbulence, and there was no showing, either by specific evidence or common knowledge, that such sudden motion of a plane does not occur in the absence of negligence in the operation of the aircraft. It was also held, however, that the trial court did properly strike plaintiff's cause of action in contract, since the defendant was not an insurer of the safety of its passengers.

In Parsley v Mid-Continent Airlines, Inc. (1949, F DC Minn) [1949] US Av 424, an action by a passenger on defendant's commercial air flight to recover for injuries sustained upon his being thrown from his seat when the airplane suddenly dropped a substantial distance while in flight, it being alleged that at the time of the incident, the seatbelt sign was not illuminated, the trial court instructed the jury that a negligent failure of the defendant's personnel to warn the plaintiff to fasten his seatbelt when rough air was likely to be encountered on the trip would constitute negligence. The court further instructed that if fairly accurate weather data was made available to the pilot, and in the exercise of the highest degree of care and skill in the making of the flight he knew or should have known that such weather conditions were forecast for the route of the flight, it was his duty to be on the lookout for such weather before actually encountering it and to exercise the highest degree of care in that regard so

as to warn the passengers to fasten their seatbelts. The evidence showed that shortly after takeoff the seatbelt sign went off, indicating to passengers that they could remove their belts, but that after the plane had been flying for about an hour the air became bumpy, visibility decreased, and rain started, these conditions continuing for about 5 minutes in increasing darkness, whereupon the plane dropped and the plaintiff received injuries, and that before the drop of the plane, no warning was given to the passengers to fasten their seatbelts. Under these circumstances the jury returned a $25,000 verdict for the plaintiff, and there was no appeal.

### [b] Allowing passenger to leave seat in rough weather

An airline has been held liable for injuries suffered by a passenger where, notwithstanding recurring air turbulence, she was expressly permitted by a member of the crew to leave her seat.

In Urban v Frontier Air Lines (1956, DC Wyo) 139 F Supp 288, it appeared that the plaintiff was a fare-paying passenger on defendant's airline when the weather became rough and turbulent and the flight became what the stewardess later described as "the roughest trip I have been on since I have been flying"; that plaintiff then requested permission to go to the plane's lavatory but was advised by the stewardess that it was too rough and that she should "wait a little while"; that plaintiff complied with this instruction until a few minutes later when, according to plaintiff, the stewardess nodded her head and advised her that "I think you can go now," whereupon the plaintiff unfastened her seatbelt and went to the lavatory; and that while she was there the plane hit a sudden downdraft, throwing her to the floor and breaking her ankle. Although she denied giving plaintiff permission to unfasten her seatbelt and go to the lavatory, the stewardess' reports concerning the accident and her testimony from the witness stand were in direct conflict. Holding that a recovery by plaintiff for her injuries was warranted, the court rejected the defense of assumption of risk as without merit, stated that common carriers by air should exercise the highest degree of care consistent with the practical operation of the plane and protection of its passengers from injury, and said that, viewing all of the testimony, facts, and circumstances in the light most favorable to the defendant, it was inclined to believe that the plaintiff had been authorized and permitted by the stewardess to leave her seat and go to the lavatory, that such permission, in view of the existence of the rough and turbulent weather, constituted negligence on the part of the stewardess which was the proximate cause of the injury plaintiff sustained, and that a reasonable and prudent person would have known or should have known that rough and turbulent weather was likely to recur before plaintiff returned to her seat.

### § 5. — Liability for failure to furnish seatbelt

As discussed in § 2[a] supra, all aircraft which fall under federal regulation are required to be equipped with seatbelts. However, before the enactment of these regulations, there existed no such requirement. Although in modern times it is difficult to conceive of an aircraft's not being equipped with seatbelts, one early case, presumably of historical interest only, was litigated on this point.

In Boulineaux v Knoxville (1935) 20 Tenn App 404, 99 SW2d 557, an action for recovery of damages for injuries suffered in the crash of a plane that was not equipped with seatbelts, it was primarily held that the absence of seatbelts in the plane was not shown to have proximately or even remotely contributed to

the extent of the injuries suffered by the plaintiff. It should be pointed out, however, that it was also stated by the court that, at that time, ordinary flying machines were not equipped with belts, and that belts were used only in stunt flying to prevent fliers from falling out of their machines when they turned over in the air. The accident in question allegedly occurred when the engine of the plane began missing shortly after takeoff and finally stalled, the plane falling into a deep gully. The court pointed out that there was no proof that the plaintiff was thrown out of the plane, thereby receiving his injuries upon the ground, and that the jury was not warranted in concluding that he received the injuries in any way other than that supported by the facts. The court thus concluded that there was no duty of the defendant to provide seatbelts or to see that they were provided when the machine was not engaged in stunt flying.

**Consult POCKET PART in this volume for later case service**

### § 12 Judicial rejection of the Lord Mansfield rule

Since there is no authority indicating that Lord Mansfield's doctrine is part of state's law, and in light of modern statutory trend toward discarding outmoded competency rules, doctrine is inapplicable in Missouri, where presumption of legitimacy is clearly rebuttable, and all relevant evidence is admissible. Re L (**Mo**) 499 SW2d 490.

In action brought by mother against putative father for payment of child support, mother's testimony on non-access of her husband was admissible; court rejected rule barring testimony of mother or her husband regarding non-access with respect to question of paternity of child born or begotten in wedlock, holding that rule was devoid of basis in good sense or public policy and noting that it rendered incompetent parties possessing best evidence of access or non-access. Commonwealth ex rel. Savruk v Derby (**Pa Super**) 344 A2d 624 (citing annotation).

In heirship proceeding, widow's testimony to nonaccess was admissible and court declined to follow Lord Mansfield's rule where public policy grounds of "decency" and "morality" were insufficient rationale for rule and application thereof barred best possible evidence on issue. Davis v Davis (**Tex Civ App**) 507 SW2d 841, granted.

### III. THE RULE UNDER STATUTES

### § 16 Statutes expressly directed to the rule or to competency of spouses

Standard of proof having changed from "reasonable doubt" to "clear preponderance of evidence" in statute providing for competency of husband and wife, trial court erred in holding that illegitimacy was not proved, where, among other things, both spouses testified as to nonaccess. Schmidt v Schmidt, 21 **Wis 2d** 433, 124 NW2d 569.

## 49 A.L.R.3d 295

### Liability of owner or operator of motor vehicle or aircraft for injury or death allegedly resulting from failure to furnish or require use of seatbelt

**Research References**
**A.L.R. Library**

Liability under state law for injuries resulting from defective automobile seatbelt, shoulder harness, or restraint system, 48 A.L.R.5th 1

Failure to use or misuse of automobile child safety seat or restraint system as affecting recovery for personal injury or death, 46 A.L.R.5th 557

Motorcyclist's failure to wear helmet or other protective equipment as affecting recovery for personal injury or death, 85 A.L.R.4th 365

Products liability: sufficiency of proof of injuries resulting from "second collision", 9 A.L.R.4th 494

Nonuse of automobile seatbelts as evidence of comparative negligence, 95 A.L.R.3d 239

Automobile occupant's failure to use seat belt as contributory negligence, 92 A.L.R.3d 9

Nonuse of seat belt as failure to mitigate damages, 80 A.L.R.3d 1033

Liability of airline for injury or death of passenger resulting from violation of duty imposed by Federal Aviation Act of 1958 (49 U.S.C.A. §§ 1301 et seq.) and implementing regulations, 31 A.L.R. Fed. 270

**Trial Strategy**

Crashworthiness of motor vehicle—defective automobile seatbelts, 4 Am. Jur. Proof of Facts 3d 131

The seatbelt defense, 3 Am. Jur. Proof of Facts 3d 71

Auto product liability: defective seatbelt, 37 Am. Jur. Trials 401

The seat belt defense, 35 Am. Jur. Trials 349

### § 1[b] Introduction—Related matters

Supplemental related annotations, if any, are now located under the Research Reference heading of this annotation.

### § 3[b] Automobile cases—Liabilty not established or not supported

In action by railroad employee against railroad seeking damages for injuries occurring while employee was being transported to job site by taxicab, pursuant to arrangement made by railroad, jury could have concluded that cab company, which was joined as additional defendant by railroad, was not negligent and was thus not liable to employee for failing to install seat belts in its cabs; jury could have concluded that reduction of risk accomplished by use of seat belts did not merit social cost of higher fares or reduced service that might accompany requiring their installation. Benson v Penn Central Transp. Co. (**Pa**) 342 A2d 393.

## 49 A.L.R.3d 321

### Validity of exculpatory clause in lease exempting lessor from liability

24

For latest cases, call the toll free number appearing on the cover of this supplement.