UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF WASHINGTON

---

THOMAS A. WAITE,

        Plaintiff,

vs.                      No. CV-05-399-EFS

THE CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS d/b/a
CORPORATION OF THE PRESIDING
BISHOP OF THE CHURCH OF JESUS
CHRIST OF LATTER DAY SAINTS, a
Utah corporation, d/b/a CORPORATION
OF THE PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER DAY SAINTS,
a Utah corporation; DONALD C. FOSSUM;
and STEVEN D. BRODHEAD,

        Defendants.

---

DEPOSITION OF STEVEN D. BRODHEAD

---

        BE IT REMEMBERED that on the 11th day of December 2006, at the hour of 5:08 p.m., the deposition of STEVEN D. BRODHEAD was taken at the request of the Plaintiff, before Caryn E. Winters, RPR, a notary public and court reporter, Washington CCR No. 2496, Idaho CSR No. 237, at 717 West Sprague Avenue, Suite 1200, Spokane, Washington, pursuant to the Washington Rules of Civil Procedure.





EXHIBIT A

1  A   I believe a week.
2  Q   All right. And did you have a girlfriend over here
3  before you came over to Spokane?
4  A   Yeah, I was seeing someone.
5  Q   Okay. What's her name?
6  A   Jenna Wilson.
7  Q   Jenna Wilson. And how long had she been -- you've just
8  referred to her in the police report as your girlfriend.
9  A   Yeah.
10 Q   How long would you note her as being your girlfriend at
11 the time of the collision?
12 A   About three months.
13 Q   All right. And had you met her over here in Spokane?
14 A   Yes.
15 Q   Is she one of the reasons why you came over? One of the
16 friends you wanted to come see?
17 A   One of the big reasons.
18 Q   Okay. And how old was she in relationship to your age?
19 A   She was 16.
20 Q   All right. So she was a year younger?
21 A   Uh-huh.
22 Q   All right. Is that a yes?
23 A   Yes. Sorry.
24 Q   All right. And I understand that you were -- on this
25 particular day, just prior to the collision, you were a

1   little upset at her?

2   A   Yes.

3   Q   Can you tell me a little bit about that?

4   A   She had a friend that came over, a guy friend, and he

5   was going to install her stereo in her car.  So I got a

6   little jealous because it's something, you know, that I

7   could have done.  And so, yeah, that kind of upset me.

8   Q   Okay.  Now, obviously I know you gave a statement to the

9   police officer?

10  A   Yes.

11  Q   Is that right?

12  A   Yes.

13  Q   And other than your attorney and/or an insurance

14  adjustor, have you given a statement to anyone else?

15  A   No.

16  Q   All right.  And I understand your father went with you

17  when you gave this statement to the police officer?

18  A   Yes.

19  Q   And were you truthful in the statement you gave him?

20  A   Yes.

21  Q   Did you attempt to misrepresent the facts in any way?

22  A   Can you explain that?

23  Q   Well, again, it just goes back to the truthfulness.  As

24  far as you know as you sit here today, was anything that you

25  said to the police officer -- let me make it easy.  Did you

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF WASHINGTON

---

THOMAS A. WAITE,

        Plaintiff,

vs.                              No. CV-05-399-EFS

THE CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS d/b/a
CORPORATION OF THE PRESIDING
BISHOP OF THE CHURCH OF JESUS
CHRIST OF LATTER DAY SAINTS, a
Utah corporation, d/b/a CORPORATION
OF THE PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER DAY SAINTS,
a Utah corporation; DONALD C. FOSSUM;
and STEVEN D. BRODHEAD,

        Defendants.

---

DEPOSITION OF STEVEN D. BRODHEAD

---

        BE IT REMEMBERED that on the 11th day of

December 2006, at the hour of 5:08 p.m., the deposition

of STEVEN D. BRODHEAD was taken at the request of the

Plaintiff, before Caryn E. Winters, RPR, a notary public and

court reporter, Washington CCR No. 2496, Idaho CSR No. 237,

at 717 West Sprague Avenue, Suite 1200, Spokane, Washington,

pursuant to the Washington Rules of Civil Procedure.


EXHIBIT B

1  is as far as stop signs?
2  A   Later I figured out what the configuration was. When I
3  got to the stop sign I thought it was a four-way stop for
4  some reason. And that's why then I proceeded through the
5  intersection.
6  Q   You were upset at somebody?
7  A   Yeah. Well, I -- a car came, you know, towards me,
8  almost T-boned me. And so I got mad and yelled and floored
9  it.
10 Q   So that's why I was a little confused. So as you sit
11 here today you remember, though, it was stop signs stopping
12 you on 8th Avenue, correct?
13 A   Yes.
14 Q   But so the right-of-way without a stop sign was on
15 Evergreen, correct?
16 A   Yes.
17 Q   And so you started after you -- did you stop at the stop
18 sign at Evergreen?
19 A   Yes.
20 Q   All right. And you entered into the intersection, and
21 you were almost hit by a car that was traveling north or
22 south on Evergreen?
23 A   North.
24 Q   North? And almost got hit. And you thought they were
25 supposed to stop, and is that why you were upset?

```
 1   A   Yes.
 2   Q   All right. And you yell something. Do you remember
 3   what you yelled?
 4   A   I don't remember what I yelled. But I yelled. I
 5   remember that.
 6   Q   But you were upset?
 7   A   Yes.
 8   Q   And I understand, had you already had your conversation
 9   with your girlfriend prior to this time?
10   A   Yes, about ten minutes prior.
11   Q   Okay. So about ten minutes? Did you have a cell phone?
12   A   Yes.
13   Q   Okay. So you had a cell phone with you. You'd been on
14   the cell phone before you turned, at some point in time
15   before you turned off onto 8th Avenue. But my understanding
16   is you did not have a cell phone, you didn't use the cell
17   phone once you got on 8th Avenue; is that correct?
18   A   I didn't use it at all when I was driving.
19   Q   Okay. That's fair. But there wasn't any type of
20   collision on Evergreen and 8th Avenue at that point?
21   A   No.
22   Q   But you yelled, and I understand you honked your horn.
23   Do you recall doing that?
24   A   Yes.
25   Q   All right. Do you recall for how long you honked your
```

Page 1

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF WASHINGTON

---

THOMAS A. WAITE,

        Plaintiff,

vs.                    No.  CV-05-399-EFS

THE CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS d/b/a
CORPORATION OF THE PRESIDING
BISHOP OF THE CHURCH OF JESUS
CHRIST OF LATTER DAY SAINTS, a
Utah corporation, d/b/a CORPORATION
OF THE PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER DAY SAINTS,
a Utah corporation; DONALD C. FOSSUM;
and STEVEN D. BRODHEAD,

        Defendants.

---

DEPOSITION OF STEVEN D. BRODHEAD

---

        BE IT REMEMBERED that on the 11th day of
December 2006, at the hour of 5:08 p.m., the deposition
of STEVEN D. BRODHEAD was taken at the request of the
Plaintiff, before Caryn E. Winters, RPR, a notary public and
court reporter, Washington CCR No. 2496, Idaho CSR No. 237,
at 717 West Sprague Avenue, Suite 1200, Spokane, Washington,
pursuant to the Washington Rules of Civil Procedure.



21

1  that stands out in your mind as we sit here today, before
2  you get to Evergreen when you yell at this guy that almost
3  hit you?
4  A   No, just Evergreen is the one that stands out.
5  Q   Okay. That's fair. But you do recall at some point in
6  time slowing down. Do you hit the brakes or do you just
7  take your foot off the accelerator, do you remember?
8  A   I took my foot off the accelerator and had my foot still
9  over the accelerator, but I wasn't pressing that.
10 Q   Okay. All right. And it indicates in the police report
11 -- you indicated you looked at it -- it said that "He saw
12 the stop sign at Adams and hit the brakes."
13         Do you recall at some point in time seeing stop
14 signs, a stop sign at Adams Road?
15 A   That was the first time I had been down towards Adams.
16 Q   No. But, I mean, before the collision occurred, at some
17 point in time you remember seeing a stop sign on this date
18 as you're traveling -- now just talking about this date, so
19 the very first time you've been on the road. But I'm
20 talking about as you were approaching Adams Road on this
21 occasion, at some point in time you do remember seeing a
22 stop sign for you?
23 A   Yes.
24 Q   All right. And do you recall, I believe one of the
25 girls in the car with you yelled something about a stop

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

THOMAS A. WAITE,
                Plaintiff,

vs.               Case No. CV-05-390 9-EFS

THE CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS D/B/A
CORPORATION OF THE PRESIDING
BISHOP OF THE CHURCH OF JESUS
CHRIST OF LATTER DAY SAINTS,
a Utah corporation, d/b/a
CORPORATION OF THE PRESIDENT OF
THE CHURCH OF JESUS CHRIST OF
LATTER DAY SAINTS, a Utah,
corporation, DONALD C. FOSSUM,
and STEPHEN D. BRODHEAD,
                Defendants.

DEPOSITION OF JOHN HUNTER

Deposition upon oral examination of JOHN HUNTER, taken at the request of the Defendant before David Storey, a Notary Public, CSR No. STORED*566QO, at the law offices of Eymann, Allison, Hunter & Jones, 2208 W. Second Avenue, Spokane, Washington, commencing at or about 11:00 a.m., on March 16, 2007, pursuant to the Washington Rules of Civil Procedure.

EXHIBIT D

23

fcaba926-bef5-41ea-8883-efb99058092a

JOHN HUNTER                    WAITE v LDS                    MARCH 16, 2007

Page 18

1   Q.   Okay.  You would agree that depending on where
2   Mr. Fossum stopped, a calculation could be done as to how
3   far down the road he could see, based on the road design?
4   A.   You could probably do it off the aerial too, yes, you
5   can.  You are talking about the view obstruction on the left
6   and how far he can see depending on where he stopped?
7   Q.   Yes.
8   A.   Sure.  The closer he gets to the intersection, the more
9   his visibility increases.
10  Q.   Okay.  Do you have an opinion as to whether you believe
11  Mr. Fossum should have stopped?
12  A.   Well, yes, he should have stopped in a position where he
13  can check for traffic in both directions.
14  Q.   Okay.  And do you know where that is on that road?
15  A.   A specific point?
16  Q.   Yes.
17  A.   No.  I know that he can stop and clear the sight
18  obstruction before entering the intersection, but I don't
19  know where his exact position would be, no.
20  Q.   Okay.  So at time of trial you are not going to render
21  an opinion either as to where, in fact, where he stopped or
22  where you believe he should have stopped?
23       MR. NORDSTROM:  I'll object.  I think he addressed that
24  in his report that he would.
25  Q.   (BY MR. REKOFKE)  Then I'm asking where it is then.  You

24